Robert E. Kerstetter, Petitioner v. Commonwealth of Pennsylvania, Unemployment Compensation Board of Review, Respondent.

Submitted on briefs November 17, 1983, to Judges Rogers, MacPhail and Barry, sitting as a panel of three.

*David S. Kluxen, Jr., Allison & Pyfer,* for petitioner.

*Richard F. Faux,* Associate Counsel, with him *Richard L. Cole, Jr.,* Chief Counsel, for respondent.

Opinion by Judge Rogers, December 19, 1983:

This is an appeal from an order of the Unemployment Compensation Board of Review which affirmed a

referee's determination that the appellant (claimant) was ineligible for benefits because he was self-employed and that the claimant had received a fault overpayment in the amount of $5,100.00.

The claimant filed an application for unemployment compensation benefits on December 21, 1980, reporting that he was separated from Quaker City Enterprises, Inc. (Quaker City) because of lack of work. His application was approved[1] and he received benefit checks in the amount of $170.00 per week, from December 27, 1980 until July 18, 1981, for a total of $5,100.00. On August 31, 1981, the Office of Employment Security (OES) determined that the claimant was self-employed in Quaker City's Lancaster, Pennsylvania operation and was therefore ineligible for benefits under Section 402(h) of the Unemployment Compensation Law (Law), Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended,* 43 P.S. §802 (h). OES also assessed the claimant for a fault overpayment totalling $5,100.00 pursuant to Section 804 (a) of the Law, 43 P.S. §874(a). These determinations were upheld by the referee and the Board.

The relevant facts are not disputed. On November 20, 1980, the claimant entered into a written contract with Quaker City to be the manager of the company's new Lancaster County branch. Quaker City's business was that of cleaning and servicing ducts, chimneys, fireplaces and furnaces. The contract required the claimant to invest $5,000 for the opportunity to share in the branch's profits, and it provided that the claimant would be paid $300 each week in the form of a draw against his share of the profits.

The claimant testified that for the first four to five weeks, he received $300 each week but never received

---

[1] Quaker City never returned the separation forms mailed to it by the Office of Employment Security.

any remuneration after December 13, 1980 because he was to be paid from the profits of the branch office and the office had no profits.

As noted, the claimant filed his application for benefits on December 21, 1980, and began receiving benefits. He continued to receive benefits for approximately seven months during which he daily conducted the business of the Quaker City Lancaster County branch and during which he weekly represented to OES that he remained unemployed and available.

By letter dated December 31, 1980, he notified Qauker City that he was resigning because he was unable to realize any income. He thereafter rescinded the resignation and continued serving as branch manager until April 10, 1981, when he again submitted his resignation because of lack of income. Under the contract, he was required to continue managing his territory until a replacement manager had been assigned. Consequently, the claimant continued to perform services without earnings until approximately the week prior to the hearing date of this appeal, October 9, 1981, at which time he returned the company's vacuum truck and his initial investment was returned to him.

The term "self-employment" is not defined in the Law. However, "employment" is defined at Section 4(1) of the Law, 43 P.S. §753(1), and subsection (2) (B) provides:

> [(2)(B)] Services performed by an individual for wages shall be deemed to be employment subject to this act, unless and until it is shown to the satisfaction of the department that— (a) such individual has been and will continue to be free from control or direction over the performance of such services both under his contract of service and in fact; and (b) as to such services such individual is customarily engaged

in an independently established trade, occupation, profession or business.

Before an individual can be found to be self-employed, both elements of Section 4(1)(2)(B) must be proven. *Pavalonis v. Unemployment Compensation Board of Review*, 57 Pa. Commonwealth Ct. 289, 426 A.2d 215 (1981); *Crenshaw v. Unemployment Compensation Board of Review*, 50 Pa. Commonwealth Ct. 136, 412 A.2d 682 (1980).

The claimant asserts that the Board erred as a matter of law in its finding of self-employment under the circumstances because he was not free from control or direction over the performance of his services and he was never engaged in an independently established trade, occupation, profession or business. The claimant relies principally on the language of his employment contract which referred to him as a "branch manager"; which provided that the company should supply the equipment he used; which required him to comply with the company's general policies; and under which he was to have no ownership interest in the company. The claimant also relies on testimony to the effect that all payments for work done by the branch were made to Quaker City rather than to him and that Sears, Roebuck and Co., which occasionally referred customers, had a contract not with the claimant but with Quaker City.

The determination of whether one is self-employed is a question of law and it is not one which may be decided on the basis of the characterization given the relationship by lay persons. *Harper v. Unemployment Compensation Board of Review*, 65 Pa. Commonwealth Ct. 474, 443 A.2d 419 (1982). While there is contract language suggesting that the claimant was an employee of Quaker City, there is substantial evidence to support the conclusion that his status was that of a self-employed businessman. The claimant had full in-

dependence of action and discretion in the conduct of the branch business; he was free to accept business from any source he chose; he invested his money in return for a share in the company's profits; he was entitled to a share of cumulative net profits had any been earned; taxes were not withheld from his draws; he had the authority to hire and fire employees and directed and controlled their daily activities; and he had the authority to withdraw money from Quaker City's local account for business purposes. Taken together, these elements satisfy the Section 4(1)(2)(B) requirements and provide substantial evidence to support the Board's findings which it relied on in concluding that the claimant was self-employed.[2] As such, he was ineligible for benefits whether he received any income from the venture or not, for the statute is not designed to insure a weekly income to persons engaged in business ventures from which they may not profit in any particular week. *Unemployment Compensation Board of Review v. Kessler*, 27 Pa. Commonwealth Ct. 1, 365 A.2d 459 (1976).

The claimant further urges that in the event that we hold, as we do, that he was not entitled to the benefits received because he was self-employed, any overpayment should be considered a "non-fault" overpayment because he did not intend to defraud the OES or accept anything to which he was not entitled. He therefore asserts that the Board erred in that there was no showing of blame, censure, impropriety, shortcoming or culpability made in his acceptance of the benefits in question. *See Rozanc v. Unemployment Compensation*

---

[2] Because of this holding, we do not reach the issue of whether the claimant waived his right to argue, in the alternative, that he was not "employed" within the meaning of the statute by reason of his failure to raise that issue in his Statement of the Questions Involved.

*Board of Review,* 27 Pa. Commonwealth Ct. 369, 366 A.2d 611 (1976). We disagree.

At the hearing, the claimant testified that he did not tell the OES that he was still working for Quaker City because "I wasn't deriving an income." Further, copies of two Mail Claim Pay Orders were admitted into evidence on which the claimant, in response to the question, "Did you work for anyone, earn wages or were you self-employed during the week claimed?", answered "No." The claimant also checked "yes" to the question, "Were you able and available for suitable work during the week claimed?", when in fact, under the terms of the contract with Quaker City, he was still bound to continue serving as branch manager. It was not error to find blame, censure, impropriety, shortcoming or culpability under these circumstances.

The Board found,[3] in relevant part, that "checks were issued because claimant reported, when he originally filed his claim, that he was separated from Quaker City Enterprises because of lack of work; . . . never reported any earnings or income, never reported that he was continuing to work as Branch Manager; . . . never reported that he had resigned or attempted to resign." The Board properly concluded that the claimant "did not reveal his employment or earnings and certainly was not unemployed when he filed his application for benefits. . . . [T]he receipt of these benefits must be deemed to be by reason of his own fault."

Order affirmed.

### ORDER

AND Now, this 19th day of December, 1983, the order of the Unemployment Compensation Board of Review in the above-captioned matter is affirmed.

---

[3] The Board, in affirming the referee's decision, adopted in full the referee's Findings of Fact and Conclusions.